UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

**Hon. Hugh B. Scott**

v.                                                  **14CR42A**

**Order**

JOSEPH S. HELENIAK,

Defendant.

This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(C)

(text Referral Order, dated Mar. 5, 2014).  The instant matter before the Court is the motion of

the National Center for Missing and Exploited Children ("NCMEC") to appear in this case as

amicus curiae (Docket No. 54) and the supporting motion by the Government to accept

NCMEC's amicus brief (Docket No. 58).  During the beginning of evidentiary hearing on

March 19, 2015, the Government indicated NCMEC's desire to serve as amicus; the Government

was to brief this issue by March 31, 2015, and defendant was to respond by April 30, 2015

(Docket No. 57), but did not.  The matter was considered during the hearing on June 26, 2015,

when pro hac vice status was granted to NCMEC counsel Christopher Schmidt (Docket No. 63;

see Docket No. 56); later pro hac vice status was granted to Logan Rutherford (Docket No. 66;

see Docket No. 55).  The matter was deemed submitted as of June 26, 2015.

**BACKGROUND**

Defendant was charged with transportation of child pornography in interstate commerce, in violation of 18 U.S.C. § 2252A(a)(1) and (b)(1), on various dates in 2013 and 2014, and possession of child pornography on those dates, in violation of 18 U.S.C. § 2252(a)(5)(B) and (b)(2), with forfeiture of computer instruments (Docket No. 18, Indict.).

The alleged pornography at issue was distributed through email by an AOL account.  As the Government explained in a previous document (Docket No. 39, Gov't Response at 1-4), AOL as service provider requires subscribers to agree to terms of service that users comply with applicable laws and not use AOL's facilities to conduct illegal activity, in particular to not post content that is explicit or graphic descriptions of sexual acts.  To avoid violations and to enforce the terms of service, AOL will take any technical, legal, or other actions deemed necessary without notice to the user (id. at 1-2, Ex. 1, AOL terms of service).  In United States v. DiTomasso, No. 14-cr-160 (SAS), 2014 U.S. Dist. LEXIS 152505, at *4-5, 27 (S.D.N.Y. Oct. 28, 2014), Judge Scheindlin found that AOL, in its Member Community Guidelines, id. at *4 n.13, had reserved the right to take any action deemed warranted to prevent illegal activity, including cooperating with law enforcement (see Docket No. 51, Gov't Response at 2, Ex. 1, AOL Member Community Guidelines).

Among techniques used by AOL is a scanning tool called Image Detection and Filtering Process ("IDFP") to compare the hash value (or a unique numeric identifier for digital computer files) of scanned email with known files containing apparent child pornography (id. at 2).  When IDFP makes a match of hash values for a known pornographic file, the suspected email is reported to the NCMEC CyberTipline, pursuant to 18 U.S.C. § 2258A(a)(1) (id. at 2 & n.1; see

Docket No. 37, Def. Atty. Affirm. ¶ 101).  NCMEC was founded in 1984 under the Missing

Children's Assistance Act (Docket No. 37, Def. Atty. Affirm. ¶ 175; but cf. Docket No. 54,

Ex. A, NCMEC Amicus Brief (describing its origins and purposes)).

      Federal Bureau of Investigation task force officer Michael Hockwater swore an affidavit

in support of a federal search warrant that, AOL, in detecting a suspicious file and reporting it to

NCMEC, does not inspect the contents of the electronic file to determine whether child

pornography exists (Docket No. 37, Def. Atty. Affirm. ¶ 101).  The Government later conceded

that it learned from AOL that AOL, in fact, did physically review the suspected files before

sending them to NCMEC (Docket No. 39, Gov't Response at 4 n.4).  NCMEC then inspects the

file to confirm the presence or absence of child pornography and then reports this information to

law enforcement (Docket No. 37, Def. Atty. Affirm. ¶ 101; Docket No. 39, Gov't Response,

Ex. 4).

      In this case, on September 3, 2013, AOL submitted a report to NCMEC declaring that an

AOL user submitted an e-mail with three attachments containing suspicious images of child

pornography sent to the same e-mail address (Docket No. 37, Def. Atty. Affirm. ¶ 102; Docket

No. 39, Gov't Response at 4).  NCMEC representatives then reviewed the e-mail and attachment

and concluded that it contained child pornography (Docket No. 37, Def. Atty. Affirm. ¶ 102),

referring the matter to the New York State Attorney General's office.  On November 4, 2013,

New York State Police investigator John Lombardi viewed the images from the NCMEC

CyberTipline Report, confirming that these images were child pornography (Docket No. 39,

Gov't Response at 5-6).  On January 3, 2014, Lombardi confirmed the AOL user was the

defendant living in West Seneca, New York, and the Federal Bureau of Investigation was contacted for a possible federal prosecution (id. at 6).

On January 23, 2014, this Court issued a search warrant for the premises of 174 Broadway Road, West Seneca, New York, defendant's residence (Docket No. 37, Def. Atty. Affirm. ¶ 100).  Defendant was not in custody when the warrant was executed and defendant volunteered to be interviewed.  During the interview, defendant allegedly admitted to searching for and downloading child pornography for the past eight months; he would find images, copy and e-mail them to himself.  (Docket No. 39, Gov't Response at 6.)  Defendant was shown the three images from the CyberTipline Report and he confirmed that he e-mailed those images to himself (id.).  Defendant provided a written statement (id., Ex. 5) wherein he identified his AOL e-mail address (the same as the one reported in the NCMEC report), admitted that he looked at and e-mailed child pornography.  During the execution of the warrant, defendant's computer was seized and a subsequent forensic examination found ten images of alleged pornography (Docket No. 39, Gov't Response at 6).  This forensic examination also revealed that, after AOL terminated defendant's account, he upgraded his operating system to Windows 8, which would have deleted all child pornography actively saved on the computer (id. at 6-7).  Following execution of the search warrant, defendant was arrested and charged in a criminal complaint (Docket No. 1) with receipt of child pornography (Docket No. 39, Gov't Response at 7).  On January 29, 2014, a second search warrant was executed for defendant's former AOL account, revealing that three times e-mails were sent from that AOL address back to that address with child pornography attachments (id.), including the three images in the NCMEC report.  In another e-mail, defendant sent himself an e-mail with ten attachments of child pornography (id.).

*Defendant's Suppression Motion*

Within defendant's omnibus motion (Docket No. 37), defendant seeks to controvert the search warrants for the search of the house and for the AOL account (id., Def. Atty. Affirm. ¶¶ 102-07, 108-09, 110).  Defendant argues that NCMEC is a Government agency and thus AOL is an agent of the Government and that NCMEC's review was done without a prior search warrant (id. ¶¶ 113, 175; see Docket No. 50, Def. Atty. Aff. ¶ 5).  Defendant sought (and obtained) a hearing regarding the argued warrantless search and seizure of the images cited in the supporting affidavit for the search warrant (Docket No. 37, Def. Atty. Affirm. ¶ 150).  Defendant wanted this Court to find whether the acts of AOL "were based upon a relationship it had with federal authorities," whether NCMEC's review of the e-mail without a warrant violates defendant's Fourth Amendment rights; whether the subsequent search warrants should be controverted and evidence suppressed and whether the warrants were tainted by these unlawful acts (id. ¶ 170).

In reply, defendant pointed out that the Government conceded that in one case, United States v. Keith, 980 F. Supp. 2d 33, 40 (D. Mass. 2013), that NCMEC was found to be a Government agent when it provides information to law enforcement (Docket No. 50, Def. Atty. Aff. ¶ 10; cf. Docket No. 39, Gov't Response at 21).

*NCMEC's Motion to Be Amicus*

NCMEC moved (Docket No. 54) for leave to appear as amicus curiae and to file a brief (Docket No. 54, Ex. A (proposed Amicus Brief)).  NCMEC explains that it is "in a unique position to explain the intricacies of its mission, goals, and conduct in operating the CyberTipline, and it can bring a specialized perspective to this matter that would be useful to"

this Court (Docket No. 54, NCMEC Motion, at 1).  NCMEC has interests beyond this case

"because this Court's decision could undermine CyberTipline operations generally," thus

NCMEC seeks to appear as amicus in this case (id. at 1-2).  NCMEC conferred with the parties,

the Government consented to NCMEC's participation while defendant did not (id. at 2).  Counsel

for NCMEC also moved for admission pro hac vice (Docket Nos. 55, 56), which were granted

(Docket Nos. 63 (minutes, June 26, 2015), 65 (transcript of June 26, 2015, hearing), 66).  The

Government filed a supporting motion for leave to be granted (Docket No. 58).  The defendant,

while orally objecting on March 19, 2015 (see Docket No. 64, Tr. June 30, 2015), to allowing

NCMEC's participation, defendant did not file a response to these motions.

      The Government joins in NCMEC's Motion (Docket No. 58), arguing that NCMEC's

participation would be useful to this Court in that the suppression issue here impacts cases

beyond this one—the use of AOL's PhotoDNA and NCMEC's CyberTipline systems in

identifying potential pornography as private searches (id. at 3-5).  The Government notes that

courts have allowed amicus participation where cases involve "matters of public interest,"

Andersen v. Leavitt, No. 03-cv-6115, 2007 WL 2343672, at *2 (E.D.N.Y. Aug. 13, 2007) (id. at

3).  The Government also highlights that NCMEC could provide "unique information and

perspective in this case," with NCMEC available to explain its process as sought by defendant in

his motion for a suppression hearing (id. at 5; cf. Docket No. 52, Order at 10; Docket No. 50,

Def. Atty. Aff. ¶¶ 12-15; Docket No. 37, Def. Atty. Aff. ¶¶ 111-12).  NCMEC has "a clear

interest in the CyberTipline's continued operation" that would be impacted by a decision in this

case (Docket No. 58, Gov't Response at 6).  The Government argues that NCMEC's

participation will not delay this case (id.).

**DISCUSSION**

Granting leave for a non-party to appear in a case as amicus is left to the broad discretion of this Court, <u>Citizens Against Casino Gambling in Erie County v. Kempthorne</u>, 471 F. Supp.2d 295, 311 (W.D.N.Y. 2007) (Skretny, J.).  "The usual rationale for <u>amicus curiae</u> submissions is that they are of aid to the court and offer insights not available from the parties," <u>United States v. El-Gabrowny</u>, 844 F. Supp. 955, 957 n.1 (S.D.N.Y. 1994); <u>Scarlett v. United States Dep't of Homeland Sec. Bureau of Immigration & Customs Enforcement</u>, No. 08CV534, 2009 WL 1322303, at *1 (W.D.N.Y. May 12, 2009) (Schroeder, Mag. J.).  Leave may be granted where the information from the amicus is "timely and useful," <u>Waste Mgmt. of Pa. v. City of York</u>, 162 F.R.D. 34 (M.D. Pa. 1995); <u>Long v. Coast Resorts, Inc.</u>, 49 F. Supp. 2d 1177, 1178 (D. Nev. 1999).  Granting leave should occur where the movant has an interest in the issues that extend beyond the particular case, <u>Warren v. United States</u>, No. 06CV226, 2009 WL 1663991, at *1 (W.D.N.Y. June 15, 2009) (Skretny, J.) (quoting <u>Ryan v. Commodity Futures Trading Comm'n</u>, 125 F.3d 1062, 1063 (7th Cir. 1997) (Posner, J.)); <u>see also Scarlett</u>, <u>supra</u>, 2009 WL 1322303, at *1 (granting amicus due to "significant experience" of movant) (Docket No. 54, NCMEC Motion at 2).

As summarized by Judge Posner in <u>Ryan</u>, <u>supra</u>, 125 F.3d at 1063,

> "An <u>amicus</u> brief should normally be allowed when a party is not represented competently or is not represented at all, when the <u>amicus</u> has an interest in some other case that may be affected by the decision in the present case (though not enough affected to entitle the <u>amicus</u> to intervene and become a party in the present case), or when the <u>amicus</u> has unique information or perspective that can help the court beyond the help that the lawyers for the parties are able to provide. Otherwise, leave to file an <u>amicus curiae</u> brief should be denied."

<u>Andersen</u>, <u>supra</u>, 2007 WL 2343672, at *2.

7

The Government concedes that this is not a pro se litigant situation wherein the amicus assists the Court in presenting an under-represented party's position (Docket No.58, Gov't Response at 3 n.2).  NCMEC and the Government have established that NCMEC has a unique perspective that goes to the heart of the issue of the suppression motion—NCMEC's relationship with the Government regarding reported instances of child exploitation and pornography. NCMEC has an interest that goes beyond this case regarding the viability of its CyberTipline as currently operated.  Its participation in this case is timely and will not delay proceedings. NCMEC's counsel have been granted pro hac vice admission in this case and during the continued hearing on July 21, 2015, it is anticipated that NCMEC witnesses may be called to testify regarding their CyberTipline and receipt of the offending emails that were forwarded to it by AOL.

## CONCLUSION

Based upon the above, the National Center for Missing and Exploited Children may appear in this action as amicus curiae and its motion to do so (Docket No. 54) is **granted** as well as the Government's motion (Docket No. 58) to accept NCMEC's amicus brief.

SO ORDERED.

/s/ Hugh B. Scott

Hon. Hugh B. Scott
United States Magistrate Judge

Dated: Buffalo, New York
         July 10, 2015